EASTERN NEW JERSEY POWER COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENTS.

BOROUGH OF SPRING LAKE, NEW JERSEY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENTS.

Decided January 27, 1928.

Before Justices TRENCHARD, KALISCH and KATZENBACH.

For the Eastern New Jersey Power Company, *Osborne, Cornish & Scheck.*

For the Borough of Spring Lake, *Durand, Ivins & Carton.*

For the Board of Public Utility Commissioners, *Thomas Brown.*

For the Jersey Central Power and Light Company, *Walter L. McDermott.*

PER CURIAM.

Two writs of *certiorari* were sued out of this court, one by the Eastern New Jersey Power Company and the other by the borough of Spring Lake. These writs were directed against the board of public utility commissioners to certify to this court for review an order made by the board on December 2d, 1926, which order the prosecutors allege was without the scope of the board to lawfully make, and which order attempts to deprive the prosecutors of their property without due process of law.

The cases, involving the same question, were argued together.

The order was made on December 2d, 1926, and became effective December 6th, 1926. A writ of *certiorari* was applied for and allowed December 18th, 1926. On the 15th of January, 1927, application was made on behalf of both prosecutors to the Chief Justice for leave to take depositions to be used upon the argument before this court. The application was granted. Depositions were taken accordingly.

When the argument came on to be heard counsel of defendants moved to strike out the depositions upon the ground that the testimony taken before the board, and upon which it rendered its decision, was the only proof that could be properly presented to and heard by the court on review.

We have had occasion to deal with this very question in the case of the Middlesex Water Company against the same defendant, in an opinion filed at the present term, in which we held that the allowance of an order to take testimony after a decision had been rendered by the board of public utility commissioners, could be properly made under the eleventh section of the *Certiorari* act (1 *Comp. Stat., p.* 405), but that the scope of such testimony was limited, practically, in its legal effect, to the power of the board to make the order, and that the reviewing court would not weigh the testimony, for if there was any testimony before the board, which reasonably sustained the order made by it, the court would not interfere.

We find the same situation exists here, and will therefore follow the same course, by refusing to strike out the testimony.

This matter, being disposed of, brings us to the merit of the present controversy.

The order had its origin in the following facts: The borough of Spring Lake, located on the Atlantic ocean, is a municipal corporation in the county of Monmouth. Within its borders there were two companies furnishing electric light. One was the Eastern New Jersey Power Company and the other the Jersey Central Power and Light Company. The business of the Eastern New Jersey Power Company was confined principally to the northern part of the borough. The business of the Jersey Central Power and Light Company was confined principally to the southern portion of the borough.

The borough owned some of the apparatus, especially along the boardwalk.

Believing it to be in the interest of economy of having a single contract for the electric lighting, the borough, in July, 1926, advertised for bids for furnishing street lights for the borough for five years, from November 2d, 1926, reserving the right to reject any and all bids. The Eastern New Jersey Power Company and the Jersey Central Power and Light Company bid. The latter company's bid was lower. Both bids, however, were rejected. Again the borough advertised for bids, and it was at this juncture that the Jersey Central Power and Light Company petitioned the board to determine what territory within the borough should be respectively served by the two companies, and that both companies be enjoined from constructing facilities for borough lighting in that part of the borough in which the electric lighting was supplied by the other company.

One of the principal allegations in the petition was that the borough was inviting bids for supplying electricity for the lighting of the streets of the borough as an entirety, so that the successful bidder would be entitled to light the streets of the borough with electricity to the exclusion of any other public utility corporation. The petition further set forth that as a result of the competitive bidding one electric company should do all the street lighting for the borough, and, as a consequence, the equipment of the unsuccessful bidder would be rendered useless, and there would be a duplication of poles, lines, equipment, all of which would entail an unnecessary and wasteful loss. Furthermore, that such condition of affairs would practically sanction the invasion of the territory of one company by the other.

At the hearing before the board the borough, through its attorney, waived its right to cross-examine witnesses or produce testimony on its own behalf, practically resting upon the contention that the board had no jurisdiction over the borough in relation to the latter's control of its public street in respect to lighting.

This situation left the subject-matter of the petition pending before the board to be contested between the two electric

light companies. A full hearing on the petition before the board evoked the order now under review, which order is as follows:

"This matter having been heard by the board, and its decision entered, bearing date October 14th, 1926, determining a boundary line between the portions of the borough of Spring Lake which should be supplied with electric light and power by the Jersey Central Power and Light Company and the Eastern New Jersey Power Company, respectively, the board hereby orders—

"(1.) The Eastern New Jersey Power Company to confine its operations and extensions as to street lighting service to that portion of Spring Lake lying north of the northerly line of Passaic avenue, except that it may continue to maintain its present existing lines of street lighting service that now extend southerly beyond the line already referred to.

"(2.) The Jersey Central Power and Light Company to confine its operations and extensions as to street lighting service to that portion of Spring Lake lying south of the southerly line of Passaic avenue, except that it may continue to maintain its existing facilities for street lighting purposes, which now extend in the northerly portion of the borough, beyond the southerly line of Passaic avenue."

The only question properly before us is, whether or not the board was lawfully authorized to make the order under the testimony adduced before it and in aid of the *certiorari*. If there is any testimony which reasonably sustains the finding of the board, such finding will not be disturbed.

The attack made upon the validity of the order by the borough is, that it is an attempt on part of the board to control the use of the streets of the borough relative to furnishing it with electric lighting. But this seems to us to be an unwarranted assumption. The two contesting companies are public utilities, and, therefore, their method of conducting, managing and operating their business, in which they are, respectively, engaged, is under the control of and within the jurisdiction of the board to regulate.

The service to be rendered by each of the companies is to be adequate service for the best interest of the public. Whether

or not this service is adequately performed for the benefit of the public by competing lighting companies is a question preeminently for the board to determine. The board has full power when the circumstances require it to direct the manner in which the service owing to the public from each utility company is to be performed. While the streets of the borough may be incidentally affected by the erection of poles, stringing of wires or otherwise, in furnishing electric lighting, the creation of such a condition does not seem to us to be in conflict with any right of the borough in the control of its highways.

By *Pamph. L.* 1926, *ch.* 146, *p.* 226, § 15, it is, *inter alia,* provided: "The board shall have general supervision and regulation of, jurisdiction and control over, all public utilities, and also over their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provision of this act." And by *Pamph. L.* 1926, *ch.* 150, § 17, subdivision b, the board is invested with the power to require every public utility to furnish safe, adequate and proper service, and to keep and maintain its property and equipment in such condition as to enable it to do so.

Subdivision c provides: "To establish, construct, maintain and operate any reasonable extension of its existing facilities, where, in the judgment of said board, such extension is reasonable, and will furnish sufficient business to justify the construction and maintenance of the same, and when the financial condition of the said public utility reasonably warrants the orginal expenditure required in making and operating such extensions."

It seems to us, therefore, that the board, in making the order in question here, was acting fully within the powers conferred upon it by the law-making power of this state.

The Eastern New Jersey Power Company assails the validity of the order on the ground that it deprives the company of its property without due process of law and just compensation. We find no merit in this contention. We can glean no such import from the plain language of the order.

It is the common experience of the business world that every commercial undertaking of whatever nature is subject to the hazard of loss. It is manifest that an electric light company which undertakes to furnish a municipality with lighting its streets or public buildings and enters into a contract with such municipality, for either a short or long term of years to that end, necessarily takes into consideration the cost of furnishing adequate equipment for the purpose designed, and that a time will come when the term of the contract will expire and the municipality may not see fit to renew the contract. Here we have an illustration of what might happen and thus a loss entailed on an electric light company through the disuse of poles, wires, &c., for street lighting, in the event of a refusal by the municipality to renew the expired contract.

In the instant case neither of the companies has a right in perpetuity to furnish the electric lighting for the borough. It was conscious of this fact when it embarked in the business. It undoubtedly took into consideration the cost of its equipment and the fact that it may fall into disuse by failure of the borough to renew the contract. It very likely took into consideration all these matters in fixing the rate to be charged for furnishing electricity for lighting the streets of the borough.

But be this as it may, we can discern nothing in the order of the board which attempts to do anything more than to regulate how the two electric light companies shall exercise their franchises, and this the board was legally qualified to do under the statute above referred to.

The order is affirmed, with costs.